IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

v.                                    Civ. No. 16-846 JB/SCY

                                         (Cr. No. 91-545 JB)

WILLIAM P. PYLE,

       Defendant/Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Defendant William P. Pyle's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Doc. 1)[1], filed June 16, 2016. Defendant asks the Court to vacate his sentence on the basis that two of the three convictions the sentencing Court relied on to enhance his sentence no longer qualify as violent felonies under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), in light of the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*").[2] The first is an Oregon conviction for second degree robbery. The second is a Florida conviction for battery on a law enforcement officer (BOLEO). The United States counters that, before the Court can consider Defendant's attack on his underlying convictions, Defendant must demonstrate that the sentencing Court relied on the residual clause of the ACCA to enhance his sentence. Civ. Doc. 7. Defendant's failure to do so, the United States further asserts, is fatal to

---

[1] Documents referenced as "Civ. Doc. ___" are to Case No. 1:16-cv-00846 JB/SCY. Documents referenced as "Cr. Doc. __" are to the underlying criminal case, Case No. 1:91-cr-00545 JB.

[2] There are two *Johnson* decisions from the United States Supreme Court that are referenced throughout this opinion: *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*) and *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*). In addition, I consider an Oregon state decision, *State v. Johnson*, 168 P.3d 312, 314 (Or. Ct. App. 2007) (*Johnson III*) in my analysis.

Defendant's motion. *Id*. United States District Court Judge James O. Browning referred this matter to me for proposed findings and a recommended disposition on July 25, 2016. Civ. Doc.2.

Having reviewed the submissions of the parties, the record, and the relevant law, I recommend that the Court grant Defendant's motion on the basis that his prior Florida conviction for battery on a law enforcement officer (BOLEO) does not qualify as a violent felony for enhancement purposes under the ACCA. I further recommend that the Court re-sentence Defendant.

## I.      Factual Background and Procedural History

On November 8, 1991, a federal grand jury charged Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). CR. Doc. 1. On April 6, 1992, the United States notified Defendant that he was subject to an enhanced sentence under the ACCA because he had three prior violent felony convictions. CR. Doc. 14. The United States indicated that it intended to seek a minimum sentence of fifteen years imprisonment pursuant to the ACCA rather than a maximum sentence of ten years imprisonment pursuant to 18 U.S.C. § 924(a)(2). *Id.*

On April 13, 1992, a jury convicted Defendant of being a felon in possession of a firearm and the case proceeded to sentencing on June 24, 1992. CR. Docs. 20-21. At sentencing, the Court adopted the factual findings and guideline applications set forth in the presentence report ("PSR"). CR. Doc. 30. Among these findings, the Court determined that Defendant had three prior felony convictions for crimes of violence: (1) a 1976 conviction in Oregon for robbery in the second degree; (2) a 1982 conviction in New Mexico for armed robbery and (3) a 1989 conviction in Florida for battery of a law enforcement officer (BOLEO). *Id.* Absent application of the ACCA, Defendant's base offense level was 12 and his criminal history category was V, thereby establishing a guideline imprisonment range of 27 to 33 months. *Id.* Based on

Defendant's prior convictions, however, the Court found that Defendant was subject to a statutory minimum sentence of fifteen years imprisonment under the ACCA, an enhanced sentencing guideline offense level of 33, and a criminal history category of VI. *Id.* This application of the ACCA catapulted Defendant's guideline imprisonment range to between 235 and 293 months. *Id.*

The Court sentenced Defendant to a term of imprisonment of 235 months followed by three years of supervised release. *Id.* In 1993, the Tenth Circuit Court of Appeals affirmed Defendant's conviction. CR. Doc. 35. On July 22, 2016, the Tenth Circuit granted Defendant authorization to file this second or successive § 2255 motion to assert a claim for relief based on *Johnson II*. CR. Doc. 43.

## II.    Applicable Law

The ACCA provides that an individual who violates 18 U.S.C. § 922(g) and has three prior convictions for a "violent felony" or a "serious drug offense" is subject to a minimum sentence of fifteen years imprisonment. 18 U.S.C. § 924(e)(1). The ACCA defines the term "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that--
>
> (i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*; . . .

18 U.S.C. § 924(e)(2)(B) (emphasis added). Subpart (i) of this definition is known as the "force clause" or "elements clause"; the non-italicized portion of Subpart (ii) is known as the "enumerated clause" and the italicized portion of Subpart (ii) is known as the "residual clause." *See Johnson II*, 135 S. Ct. at 2556; *See United States v. Harris*, 844 F.3d 1260, 1263 (10th Cir.

2017). In *Johnson II*, the Supreme Court held that the ACCA's residual clause is unconstitutionally vague, but left its force and enumerated clauses intact. 135 S. Ct. at 2563. The Supreme Court subsequently held that *Johnson II* announced a new substantive rule that applies retroactively on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1264-65 (2016). Thus, Defendant may challenge the Court's enhancement of his sentence pursuant to the ACCA's residual clause by way of a motion under 28 U.S.C. § 2255. *See Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011) (stating that a motion under 28 U.S.C. § 2255 "is generally the exclusive remedy for a federal prisoner seeking to attack the legality of detention." (internal citation and alterations omitted)).

To determine whether a prior conviction qualifies as a violent felony under the ACCA, courts generally apply the categorical approach, which looks only to the elements of the offense, expressly barring consideration of the actual facts underlying the defendant's prior conviction. *See Harris*, 844 F.3d at 1264-65; *United States v. Smith*, 652 F.3d 1244, 1246 (10th Cir. 2011). Courts must presume that a prior conviction "rested upon nothing more than the least of the acts criminalized" by the state statute. *See Moncrieffe v. Holder*, 133 S.Ct. 1678, 1684 (2013) (internal quotation marks and citation omitted). In determining this minimum level of culpable conduct, the Court is limited to such conduct in which there is a "realistic probability, not a theoretical possibility" the state statute would apply. *Id.* at 1685. "Decisions from the state supreme court best indicate a 'realistic probability,' supplemented by decisions from the intermediate-appellate courts." *Harris*, 844 F.3d at 1264. To satisfy the categorical approach, "it is not necessary that every conceivable factual offense covered by a statute fall within the ACCA. Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, qualifies under the ACCA as a violent felony." *Smith*, 652 F.3d at

4

1246 (emphasis added). When a statute includes multiple alternate elements that create distinct versions of a crime, the Court may employ the "modified categorical approach." *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). "Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.*

Defendant's 1976 Oregon conviction for second degree robbery and his 1989 Florida BOLEO conviction are not one of the enumerated offenses set forth in § 924(e)(2)(B)(ii). Thus, the elements clause provides the only avenue through which Defendant's ACCA enhancement can survive. As a result, the Court must ask whether either the Florida or Oregon offense, or both, has "as an element the use, attempted use, or threatened use of physical force against the person of another." [3] *See* § 924(e)(2)(B)(i). "This inquiry requires application of both federal law and [ ] state law. Federal law defines the meaning of the phrase 'use, attempted use, or threatened use of physical force' in § 924(e)(2)(B)(i). And state law defines the substantive elements of the crime of conviction." *Harris*, 844 F.3d at 1264 (internal citations and quotation marks omitted).

## III.    Analysis

Before I reach the merits of Defendant's § 2255 motion, I address two threshold issues the United States has raised. The first issue relates to the timeliness of Defendant's motion. A defendant has one year from the time the Supreme Court announces a new substantive rule to file a motion under § 2255. *See* 28 U.S.C. § 2255(f). The new substantive rule the Supreme Court announced in 2015 when it decided *Johnson II* relates to the residual clause only. Thus, *Johnson II* only provides Defendant a mechanism for relief if he was sentenced under the ACCA's residual clause rather than one of its other two clauses. The United States argues that

---

[3] Defendant makes no argument with regard to his New Mexico conviction.

Defendant's § 2255 motion must fail because Defendant has not established that the Court sentenced him under the ACCA's residual clause.

The second threshold issue concerns whether the Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*"), applies retroactively. In *Johnson I*, the Supreme Court concluded that battery in Florida is not a violent crime for ACCA purposes. Defendant's sentencing, of course, occurred many years before the Supreme Court decided *Johnson I*. Thus, Defendant's argument that *Johnson I* precludes application of the elements clause as an alternative to the residual clause can only succeed if *Johnson I* is applied retroactively.

   a. **Defendant need only show that the sentencing court may have relied on the residual clause in order to seek § 2255 relief under *Johnson II***

The United States argues that Defendant is ineligible for relief under *Johnson II* because he has failed to meet his burden of establishing that his sentence was enhanced under the clause with which *Johnson II* dealt – the ACCA's residual clause. *See* Resp. at 4-7 (Civ. Doc. 7). Noting that a defendant carries a heavier burden on a second or successive § 2255 motion and that this is Defendant's second or successive § 2255 motion, the United States argues that Defendant must provide "specific and particularized evidence" demonstrating that he was sentenced under the residual clause. *Id*. at 5. Accepting this argument would, in this case, place a particularly high hurdle in front of Defendant. This is because, as the United States acknowledges (*Id*. at 5-6), the record from Defendant's underlying criminal case is silent as to whether his sentence was enhanced pursuant to the residual clause or the elements clause. There is no existing transcript or recording of Defendant's 1992 sentencing hearing and recent efforts

by the Court to obtain this information were unsuccessful.[4] In addition, the judgment entered in

the criminal case does not specify which ACCA clause the sentencing Court applied – it only

states that Defendant was subject to an enhanced sentence under the ACCA due to "three prior

felony convictions for crimes of violence." Cr. Doc. 30 at 2. Likewise, the enhancement

information the United States filed and the presentencing memorandum (PSR) are both silent on

this issue. Cr. Doc. 14; Civ. Doc. 6-1. In short, the silence in the record prevents Defendant from

establishing that the Court sentenced him pursuant to the residual clause rather than the elements

clause. The United States argues that, because Defendant carries the burden of proving his

entitlement to relief, this inability is fatal to his claim.

The position taken by the United States regarding Defendant's burden of proof is based

not on any specific guidance from the Tenth Circuit Court of Appeals, but, in part, on a 2016

panel decision from the Eleventh Circuit Court of Appeals, *In re Moore*, 830 F.3d 1268 (11th

Cir. 2016). As the United States recognizes, however, there have been conflicting decisions

issued by the Eleventh Circuit on this issue. *See In re Chance*, 831 F.3d 1334 (11th Cir. 2016);

*see also* Leah M. Litman, Shakeer Rahman, *What Lurks Below Beckles*, 111 Nw. U.L. Rev.

Online 69, 84-86 (2016) (noting that the Eleventh Circuit "appears to be internally divided on

what amounts to a prima facie showing" for § 2255 habeas relief under *Johnson II* and

discussing inconsistent rulings from various panels). The differing approaches taken in *Moore*

and *Chance* are characteristic of the different approaches federal district courts have taken when

analyzing the merits of a second or successive § 2255 motion seeking relief based on *Johnson II*.

---

[4] Upon determining that the Court's records no longer include a copy of a recording and/or transcript of
Defendant's sentencing, the Court contacted the court reporter present at the sentencing to determine
whether she retained any recordings of the sentencing. The court reporter, however, no longer had the
recording.

The panels in *Moore* and *Chance* agreed insofar as they each permitted the petitioner before them *to file* a second or successive § 2255 habeas application on the basis of *Johnson II*. *Moore*, 830 F.3d at 1269, 1273; *Chance*, 831 F.3d at 1336. They drastically differed, however, with regard to what the district court should do upon receiving the petition. Like the present case, the record in *Moore* failed to reveal what ACCA clause the sentencing judge relied on to enhance the defendant's sentence. *Id.* at 1272; *see also id.* at 1271-73. This absence of information, the *Moore* panel concluded, doomed the defendant's petition. The panel wrote:

> the district court cannot grant relief in a § 2255 proceeding unless the movant meets his burden of showing that he is entitled to relief, and in this context the movant cannot meet that burden unless he proves that he was sentenced using the residual clause and that the use of that clause made a difference in the sentence. *If the district court cannot determine whether the residual clause was used in sentencing and affected the final sentence—if the court cannot tell one way or the other—the district court must deny the § 2255 motion.* It must do so because the movant will have failed to carry his burden of showing all that is necessary to warrant § 2255 relief.

*Id.* at 1273 (emphasis added).

The panel in *Chance* disagreed. 831 F.3d at 1338. It criticized the *Moore* panel's suggestion that "the district court must make the inmate prove whether or not [he] was sentenced under the residual clause" as pure dicta that was "quite wrong" for two reasons. *Id.* at 1340-42 (quotation marks omitted). First, it concluded that the *Moore* panel's approach implies that a district judge "can ignore decisions from the Supreme Court that were rendered since [the time of sentencing] in favor of a foray into a stale record." *Id.* at 1340. The panel stated that under the *Moore* panel's rule, "a defendant could not benefit from that binding [Supreme Court] precedent except in the rare circumstances where the sentencing judge thought to make clear that she relied on the residual clause. That is not right." *Id.* Second, the *Chance* panel found that the *Moore* panel's rule would lead to "selective application" that would "violate the principle of treating

similarly situated defendants the same" because only those cases where the sentencing judge

"uttered the magic words 'residual clause'" would be eligible for relief. *Id.* As the panel noted,

this would be the outcome because "[n]othing in the law require[d] a judge to specify which

clause of § 924(c)—residual or elements clause—it relied upon in imposing a sentence." *Id*. at

1340-41. The *Chance* panel then stated its view in dicta that:

> [I]t makes no difference whether the sentencing judge used the words "residual
> clause" or "elements clause," or some similar phrase. . . . To be sure, the inmate is
> the one who has to make the showing that his sentence is now unlawful. But we
> believe the required showing is simply that § 924(c) may no longer authorize his
> sentence as that statute stands after *Johnson*—not proof of what the judge said or
> thought at a decades-old sentencing.

*Id*. at 1341.

Chance does not stand alone. A number of district court judges within the Tenth Circuit

have applied the same reasoning to also conclude that a defendant need only show that the

sentencing court *may have* relied on the residual clause in order to seek relief under *Johnson II*.

*See United States v. Mims*, 2017 WL 477091, at *2-3 (D. Kansas Feb. 6, 2017); *See also United

States v. Hamilton*, 2017 WL 368512, at *2-4 (N.D. Oklahoma Jan. 25, 2017) ("Where the

record is silent and a court did not address any sentencing objections, it is unfair to require a

petitioner to show 'actual reliance' on the residual clause. Absent any record by the Court or

analysis in the PSR, there is no means by which a defendant could prove this fact. To hold that

*Johnson* relief is unavailable on a silent or unclear record punishes defendants and their lawyers

for failing to predict the residual clause would be found unconstitutional and therefore failing to

challenge application of the enumerated [or elements] offense clause at the time of sentencing.");

*See Broadbent v. United States*, 2016 WL 5922302, at *2-3 (D. Utah Oct. 11, 2016) (adopting

the *Chance* panel's reasoning and further indicating that "[w]hether the court utters the phrase

'residual clause,' 'force clause,' or something similar at sentencing is little more than a matter of

pure happenstance, and many district courts have refused to rely on the requirement of 'chance remark[s]' to establish a defendant's eligibility for § 2255 relief"); *See United States v. James*, 2016 WL 3936495, at *1 (D. Kan. July 21, 2016) (rejecting the government's argument that movant was "only entitled to relief if he can prove that the court actually relied on the residual clause in sentencing [him]" and holding instead that "the court's failure to specify which clause applied to Mr. James' conviction does not preclude resentencing under *Johnson*").

Although it does not appear this issue has been directly before the Tenth Circuit, in reaching their decisions, a number of district courts have relied on two Tenth Circuit opinions that also indicate a defendant need only establish that the sentencing judge may have relied upon the residual clause in order to be entitled to relief under *Johnson II*. First, in *United States v. Little*, the Tenth Circuit remanded a case for resentencing under *Johnson II* (as applied to the Sentencing Guidelines) where the district court indicated that the defendant's prior New Mexico convictions were crimes of violence under either the elements clause or the residual clause, but did not specify which clause it was using to enhance the defendant's sentence. *Little*, 829 F.3d 1177, 1186-87 (10th Cir. 2016); *see also United States v. Little*, No. 5:12-cr-02654-RB (N.M. Jan. 23, 2015), ECF No. 129 at 6. The Tenth Circuit concluded that resentencing was necessary because any reliance on the residual clause by the district court constituted plain error. *Little*, 829 F.3d at 1187.

The sentencing court in the second case, *United States v. Mitchell*, also failed to specify which clause (as applied to the Sentencing Guidelines) it relied on to find that the defendant's prior assault conviction constituted a crime of violence. 653 F. App'x 639, 640 (10th Cir. 2016). In reviewing the defendant's § 2255 habeas petition, the Tenth Circuit stated that, notwithstanding this silence in the record, the defendant's sentence was invalid under *Johnson II*

10

unless the assault offense qualified as a crime of violence under the elements or enumerated clauses. *Id.* Thus, *Mitchell* also seems to suggest that a defendant does not have to demonstrate that the district court actually relied on the residual clause in order to seek relief under *Johnson II*.

In the present case, the lack of any elements analysis in the PSR or in the notice of enhancement makes it most likely that the sentencing judge relied on the residual clause rather than the elements clause to trigger enhancement of Defendant's sentence. I find that Defendant has established (and the United States certainly does not dispute) that the sentencing judge *may have* relied on the residual clause when he sentenced Defendant. I agree with the above opinions that have concluded, in these circumstances, that is enough. Although a defendant does carry a higher burden in second or successive § 2255 cases, this burden stops short of requiring the clairvoyance Defendant would need to succeed under the standard the United States urges the Court to adopt.

**b. The Supreme Court's *Johnson I* decision is applicable to this case**

The next threshold procedural argument the United States raises is that Defendant cannot seek relief based on *Johnson I* because this case did not announce a "new rule of constitutional law" and therefore is not grounds for relief on a second or successive § 2255 motion. Civ. Doc. 7 at 7. Alternatively, the United States argues that, even if *Johnson I* announced a new rule, Defendant is time-barred from seeking relief because he failed to do so within one year of that decision. *Id.*

The Supreme Court's decision in *Johnson I* is relevant to this case for two reasons. First, in *Johnson I*, the Supreme Court clarified the meaning of "physical force" for purposes of ACCA's elements clause. *See* § 924(e)(2)(B)(i) (a crime is a violent felony for purposes of the

ACCA if it "has as an element the use, attempted use, or threatened use of physical force against the person of another"). The Supreme Court specifically held that "physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. Second, *Johnson I* addressed one of the criminal offenses at issue in the present case: Florida's felony offense of battery committed by "[a]ctually and intentionally touch[ing]" another person, Fla. Stat. § 784.03(1)(a). *Id.* at 135. After defining physical force as violent force or force capable of causing physical pain or injury to another, the Supreme Court determined that Florida's felony offense of battery is not a violent felony under the ACCA's elements clause. *Id.* at 145.

I recommend finding that *Johnson I* should be applied retroactively and, therefore, is applicable to this case. The presiding judge in this matter, the Honorable James O. Browning, recently addressed this issue in *Garcia v. United States of America*, No. 1:16-cv-00240-JB-LAM (N.M. Jan. 31, 2017). *See* Mem. Op. and Order (ECF No. 37). In that case, Judge Browning determined that "*Johnson I* applied a settled rule of law in confirming that, by ACCA's element clause, Congress envisioned 'violent force' as a necessary requirement. . . The retroactivity analysis, then, becomes irrelevant; *Johnson I* is retroactive, because it has always been the law[.]" *Id.* at 50-51. I adopt Judge Browning's reasoning. Also like Judge Browning, I find it persuasive that the Tenth Circuit recently relied on *Johnson I* to supply the meaning of "physical force" when confronted with the question of whether a 1979 Colorado robbery conviction fell within the ACCA's elements clause. *Harris*, 844 F.3d at 1262, 1268 (concluding that "robbery by 'force' in Colorado categorically matches the definition of 'physical force' assigned by the Supreme Court in *Johnson I*."). The Tenth Circuit's reliance on *Johnson I* in *Harris* supports a

decision to rely on *Johnson I* in the present case to decide the merits of Defendant's § 2255 petition.

I also note that Defendant could not be expected to file a § 2255 petition in 2010 on the basis of *Johnson I.* This is because a potential challenge to an ACCA sentence under the residual clause did not grow legs until years later, when the Supreme Court tossed out the residual clause in *Johnson II.* Indeed, when the Supreme Court decided *Johnson I,* it expressly declined to consider whether the Florida battery offense qualified as a violent felony under the ACCA's residual clause. 559 U.S. at 145. Thus, even if Defendant could have claimed in 2010 that *Johnson I* did not permit his Florida BOLEO conviction to serve as an ACCA predicate under the elements clause of the ACCA, doing so would have served no purpose; the conviction still could have qualified as a violent felony under the residual clause. It was only after the Supreme Court invalidated the residual clause in *Johnson II* that the opportunity arose for Defendant to challenge the enhancement of his sentence. Therefore, I disagree with the United States that Defendant had a cognizable claim when the Supreme Court decided *Johnson I.* Instead, I find that he is not procedurally barred from raising his claim now because it did not become cognizable until the Supreme Court issued *Johnson II.*

**c. Merits of Defendant's § 2255 Motion**

The Court's rejection of the United States' procedural arguments does not mean that the United States automatically loses; instead, it simply means that Defendant's petition will be decided on its merits. As a result, the Court now considers whether Defendant's 1989 Florida BOLEO conviction and his 1976 Oregon conviction for second degree robbery qualify as violent felonies for enhancement purposes under the ACCA.

i.    *Florida BOLEO Conviction*

Although Defendant's BOLEO conviction in Florida occurred after his second degree robbery conviction in Oregon, I address the Florida conviction first because it presents an easier question of whether the offense is a violent crime. Two Florida battery statutes are relevant for purposes of the Court's analysis: simple battery and BOLEO – which is essentially a "simple battery committed on a law enforcement officer." *State v. Hearns*, 961 So.2d 211, 215 (Fl. 2007). Under Fla. Stat. Ann. § 784.03(1)(a) (2006)[5], simple battery occurs when a person:

1.    Actually and intentionally touches or strikes another person against the will of the other; or

2.    Intentionally causes bodily harm to another person.

"When simple battery is committed on a law enforcement officer, it becomes the separate offense of battery on a law enforcement officer, or BOLEO. The BOLEO statute converts the crime from a first-degree misdemeanor to a third-degree felony."[6] *Hearns*, 961 So.2d at 214. The

---

[5] The simple battery statute that was in effect at the time of Defendant was convicted of BOLEO was an earlier version of this statute. That version is substantively identical to the current version:

    (1) A person commits battery if he:
        (a) Actually and intentionally touches or strikes another person against the will of the other; or
        (b) Intentionally causes bodily harm to an individual.

    (2) Whoever commits battery shall be guilty of a misdemeanor of the first degree, punishable as provided in § 775.082, § 775.083, or § 775.084.

Fla. Stat. Ann. § 784.03 (eff. 1986).

[6] The BOLEO statute that Defendant was convicted under provides:

    Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer, . . . the offense for which the person is charged shall be reclassified as follows: . . .
    (b) In the case of battery, from a misdemeanor of the first degree to a felony of the third degree.

Fla. Stat. Ann. § 784.07(2) (1989).

only differences between the simple battery and the BOLEO statutes "are the status of the victim and the penalty exposed." *Id.*

Under the simple battery statute, the prosecution can prove battery in one of three ways: intentionally causing bodily harm, intentionally striking the victim, or "actually and intentionally touch[ing]" the victim. *Id*. at 218. The record in this case does not specify whether Defendant's BOLEO conviction was based on actually and intentionally touching a law enforcement officer or one of the other two elements. I presume as I must, however, that the conviction "rested upon nothing more than the least of the acts criminalized" by the statute – that is, actually and intentionally touching the victim against his/her will. *See Moncrieffe*, 133 S.Ct. at 1684.

In *Hearns*, the Florida Supreme Court addressed the level of force required to sustain a BOLEO conviction. Looking at the least of the alternative elements – actually and intentionally touching the victim – the court found, based on existing case law, that "any intentional touching, no matter how slight, is sufficient to constitute a simple battery." *Id.* at 219-20. Finding that "BOLEO, like battery itself, may be committed with only nominal contact," the court concluded that BOLEO is not a forcible felony for purposes of Florida's enhanced sentencing statutory scheme and that the use of physical force is not an element of the offense. *Id*. In *Johnson I*, the Supreme Court considered Florida's simple battery statute and, relying on *Hearns*, concluded that simple battery is not a violent felony under the ACCA's elements clause because it does not have as an element the use of physical force against another person. 559 U.S. at 137-38, 145. Based on *Johnson I* and the Florida Supreme Court's ruling in *Hearns*, I find that Defendant's BOLEO conviction is not a violent felony under the elements clause of the ACCA. I therefore recommend that the Court grant Defendant's § 2255 motion on this basis and schedule a resentencing hearing.

ii.   *Oregon Second Degree Robbery Conviction*

Although I have found that Defendant is eligible for resentencing because his BOLEO

conviction no longer counts as a predicate conviction for purposes of the ACCA, I nevertheless

also address whether Defendant's 1976 conviction for second degree robbery in Oregon is a

violent felony under the elements clause.

Oregon's robbery statutes "reflect an escalating order of seriousness, beginning with

robbery in the third degree." *State v. Hamilton*, 233 P.3d 432, 435 (Or. 2010). The third-degree

robbery statute provides that:

> A person commits the crime of robbery in the third degree if in the course of
> committing or attempting to commit theft . . . the person uses or threatens the
> immediate use of physical force upon another person with the intent of:
>
> > (a) Preventing or overcoming resistance to the taking of the
> > property or to retention thereof immediately after the taking; or
> >
> > (b) Compelling the owner of such property or another person to
> > deliver the property or to engage in other conduct which might
> > aid in the commission of the theft[.]"

Or. Rev. Stat. Ann. § 164.395(1) (West 2003). Defendant, however, was convicted of second-

degree robbery. This statue is as follows:

> A person commits the crime of robbery in the second degree if the person violates
> ORS 164.395 [robbery in the third degree] and the person:
>
> > (a) Represents by word or conduct that the person is armed with
> > what purports to be a dangerous or deadly weapon; or
> >
> > (b) Is aided by another person actually present.

Or. Rev. Stat. Ann. § 164.405 (West 1971).

The determination of whether robbery in Oregon is a violent crime is not as simple as it

might first appear. Indeed, federal cases addressing this precise issue are split and the Ninth

Circuit has requested supplemental briefing on this issue in a pending case. *See United States v.*

16

*Strickland*, No. 14-30168 (9th Cir. Nov. 6, 2015). Resolution of the issue requires analysis of

disharmonious Oregon state cases, analogous Tenth Circuit precedent, Ninth Circuit precedent,

and, of course, a litany of cases from the United States Supreme Court that address application of

the ACCA. After engaging in this analysis, I ultimately conclude that second degree robbery in

Oregon is a violent felony that counts as a predicate conviction for purposes of the ACCA for the

reasons set forth below.

I am not persuaded by Defendant's argument that the force necessary to satisfy Oregon's

second degree robbery is "de minimis." Civ. Doc. 5 at 6. Granted, his argument would be

difficult to refute if resolution of this issue depended on nothing more than a read of the primary

case he cites -- *State v. Johnson*, 168 P.3d 312, 314 (Or. Ct. App. 2007) (*Johnson III*). At the

outset, it is worth emphasizing the first obvious problem with Defendant's reliance on *Johnson*

*III*: it deals with robbery in the third degree rather than with robbery in the second degree.

Nonetheless, before analyzing the significance of the distinction between second and third

degree robbery, I consider whether Oregon courts consider robbery in the third degree to be a

violent felony. I do so because, if the answer to this question is yes, robbery in the second degree

must also be a violent felony.

*Johnson III* concerned a purse snatching where the victim, an 86-year-old woman, "did

not feel a tug or 'much of anything'" when her purse was snatched. *Id*. at 313. The Oregon Court

of Appeals held that there was sufficient evidence of physical force to sustain a third-degree

robbery conviction because the defendant had used force sufficient to overcome any resistance

by the victim in order to obtain the purse. *Id*. at 314-15. The court explained that "the statute

does not focus on the extent to which the victim may or may not have felt the force, but rather on

the perpetrator's intent, while using force on the victim, that any resistance that the victim might

offer be prevented or overcome." *Id.* at 314. The slight force used to perpetrate the purse

snatching in *Johnson III* clearly did not constitute violent force; as such, the case does lend

support to Defendant's argument that *third degree robbery* in Oregon does not require the use of

violent force.

     *Johnson III*, however, was not the last word on the issue from courts in Oregon. After the

Oregon Court of Appeals decided *Johnson III*, the Oregon Supreme Court decided *Hamilton*. In

*Hamilton*, the Oregon Supreme Court explained that the state legislature, in enacting the robbery

statutes, "adopt[ed] the view that repression of violence is the principal reason for being guilty of

robbery." 233 P.3d at 436. "It is the additional factor of actual or threatened violence that

transforms the conduct from theft, which requires only the intent to deprive, into a substantively

different crime, robbery." *Id*. Thus, while *Johnson III* indicates that third degree robbery is not

necessarily a violent felony, *Hamilton* tends to undermine this conclusion.

     What the Oregon Supreme Court says, of course, trumps what the Oregon Court of

Appeals says. Even so, the United States Supreme Court has directed that, in determining

whether a state statute constitutes a violent crime for purposes of the ACCA, the first step is to

identify the minimum force required to sustain a conviction under the state statute. *See*

*Moncrieffe*, 133 S. Ct. at 1684; *see also Harris*, 844 F.3d at 1264 (citing *Moncrieffe*). While the

general statements in *Johnson III* and *Hamilton* are difficult to reconcile, *Hamilton* does not cite,

much less overrule *Johnson III*. Nor does *Hamilton* directly address the minimum force required

to sustain a robbery conviction. *See United States v. Wicklund*, 2016 WL 6806341, *3 (D.

Oregon Nov. 17, 2016) (unpublished) (noting that *Johnson III* and *Hamilton* are "hard to square"

but finding that it must nonetheless abide by *Johnson III* because *Hamilton*, unlike *Johnson III*,

"did not directly address whether the use of minimal force could suffice to sustain a robbery

conviction."). Thus, a state district court in Oregon confronted with the issue of what jury instruction to give in the trial of an accused purse snatcher would be obligated to follow *Johnson III*. And, under *Johnson III*, a purse snatcher who used no violent force to commit his crime could nonetheless be convicted of third degree robbery in Oregon. Therefore, the minimal force necessary to sustain a third degree robbery conviction in Oregon should eliminate that statute from serving as a predicate offense under the ACCA.

This conclusion, however, is not in accord with the Tenth Circuit's holding in *Harris*. *Harris* also involved whether a state robbery statute (Colorado's) could serve as a predicate offense for ACCA purposes. 844 F.3d at 1262. Like the Oregon scenario presented above, a state court of appeals had determined that the state's robbery statute encompassed purse snatching done through the use of minimal force. *Harris*, 844 F.3d at 1267 (citing *People v. Davis*, 935 P.2d 79, 82, 86 (Colo. App. 1996) (finding that defendant's pulling of a purse from the victim's arm with enough force to break the purse strap, where the victim only felt a "slight tug" as the strap broke, was sufficient to support a robbery conviction because "[t]his was sufficient force to overcome the resistance of the purse having been attached to the victim's person"). Also like the present case, the state court of appeals decision conflicted with a subsequent state supreme court case that, while not mentioning or explicitly overruling the court of appeals decision, indicated that the state robbery statute required the use of violent force. *Harris*, 844 F.3d at 1267 (citing *People v. Borghesi*, 66 P.3d 93, 101 n.12 (Colo. 2003) (stating that Colorado robbery "involves the violent taking 'from a person'").

Confronted with a situation very similar to the one this Court now confronts, the Tenth Circuit in *Harris* did not address whether a state district court judge would be obligated under the court of appeals decision to provide, in the trial of a purse snatcher who used no violent force, an

instruction that nonetheless permitted a conviction for robbery. Instead, the Tenth Circuit summarily dismissed the court of appeals decision by simply finding, "[t]o the extent *Davis* suggests a Colorado robbery conviction can be based on less than violent force, it is not controlling in light of *Borghesi*." *Harris*, 844 F.3d at 1267. Similarly, to the extent my analysis differs from that of the Tenth Circuit, the analysis of the Tenth Circuit controls. Because the facts and relevant state court precedent in *Harris* so closely track the facts and relevant state court precedent in the present case, I recommend deferring to *Harris* and concluding that, in spite of *Johnson III*, the Oregon Supreme Court's decision in *Hamilton* directs that violent force is required to sustain a conviction for third degree robbery in Oregon. Therefore, a conviction under this statute can serve as a predicate for the ACCA. Because third degree robbery in Oregon constitutes a violent offense, so does the more serious offense of second degree robbery.

Even if third degree robbery in Oregon could not serve as a predicate offense for ACCA purposes, however, second degree robbery could, as it contains an additional element of force sufficient to qualify the offense as a violent crime under the ACCA. Specifically, Oregon's second degree robbery statute contains the additional requirement that the offender "[r]epresents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or [] [i]s aided by another person actually present." Or. Rev. Stat. Ann. § 164.405 (West 1971). An offender's use of a dangerous weapon or additional person to commit a robbery is designed to, at a minimum, place the victim in fear that "violent force" or "force capable of causing physical pain or injury to another person" might be used to accomplish the robbery. *See Johnson I*, 559 U.S. at 140 (setting forth minimum level of force sufficient to constitute a violent crime).

The Ninth Circuit Court of Appeals has reached this same conclusion and held that a conviction for second degree robbery under Oregon law constitutes a violent felony for purposes of ACCA. *See United States v. Ankeny*, 502 F.3d 829, 840 (9th Cir. 2007) (explaining that under the categorical approach, "[t]he Oregon statutory definition of second-degree robbery contains the required element of use, attempted use, or threatened use of physical violence."); *see also State v. White*, 211 P.3d 248, 257 (Or. 2009) (en banc) (stating that it is "the nature of the threat of violence—whether actual or perceived—[that] aggravates the crime of robbery and raises the crime from the third degree to the second . . . .[Thus,] [i]f the robber is alone or one of many, unarmed or armed with a deadly or dangerous weapon, the effect of the specific circumstance results in different levels of threat that may persuade the victim to part with his or her property with more or less reluctance."); *but see Wicklund*, 2016 WL 6806341, **1-3 (finding that third degree robbery is not a crime of violence under the sentencing guidelines and because "the relevant elements of Robbery II are the same as Robbery III," neither is second degree robbery). Thus, Defendant's Oregon second degree robbery conviction counts as a predicate conviction under the elements clause for purposes of the ACCA.

IV.    **Conclusion**

I reject the United States' procedural arguments and find that Defendant's § 2255 petition is timely. I further find that *Johnson I* is applicable and that this decision compels the conclusion that Defendant's BOLEO conviction no longer qualifies as a violent felony for enhancement purposes under the ACCA. Defendant should therefore be resentenced.

**BASED ON THE FOREGOING, I RECOMMEND** that the Court grant Defendant's

Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Doc. 1).


UNITED STATES MAGISTRATE JUDGE


**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**